## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

CITY OF NEW YORK,

     Plaintiff,

v.

GLOBAL MEDICAL SUPPLY GROUP
LLC; TYLER GELB; VICTORIA CONLEN;
FREDERICK LEVY; NATIONS FAST TAX
& ACCOUNTING 2, INC.; ZHEJIANG
JINRONG TRADING CO., LTD.; and
ZHU YONG,

     Defendants.

_____/

     Plaintiff the City of New York ("NYC"), by its attorneys, Proskauer Rose LLP,

alleges as follows:

### INTRODUCTION

     1.     This action arises out of the failure of Defendant Global Medical Supply

Group LLC ("Global"), in violation of its contract with plaintiff New York City ("NYC"), to

deliver immediately 130 ventilators to NYC.  That contract was entered into after Defendants

induced NYC to make a payment to Global of $8.2 million before the delivery of the

ventilators, based on representations that Defendants—Global and the other Defendants,

Global's business partners—knew or should have known were false.  Those ventilators have

never been delivered, and $4,283,905.72 of the money paid to Global by NYC has not been

returned.  At the time of the transaction in March 2020, NYC had a pressing need for ventilators

to provide life-sustaining medical services to large numbers of patients afflicted with the

coronavirus.  Exploiting the COVID-19 crisis for their own gain, Defendants obtained millions

of dollars from NYC through false statements about their ability to source the equipment in China, where the market for ventilators was in a state of frenzy due to overwhelming worldwide demand.

2.      Global, with the assistance and full participation of its joint venturer Defendant Frederick Levy, identified a Chinese export company as its partner on the supposed ventilator deal.  Unknown to NYC this Chinese export company, Defendant Zhejiang Jinrong Trading Co. ("ZJT"), was not authorized to trade in ventilators under Chinese law.  Likewise, and also unknown to NYC, Global itself did not have the requisite approval from the U.S. Food and Drug Administration to import ventilators.  None of the Defendants—including the principal and officers of Global, Tyler Gelb and Victoria Conlen, and the principal of Zhejiang, Defendant  Zhu Yong—had any experience trading in, or were authorized to import or export, medical equipment.

3.      Despite their lack of immediate access to the requested ventilators, their complete inexperience and lack of licenses and related credentials required by law, Defendants represented to NYC that they could deliver 130 ventilators of a particular type—model VG70, manufactured by Beijing Aeonmed Co.—in a matter of days.  In fact, they could not, and they did not.  Global's failure constitutes a breach of its agreement with NYC.  In addition, to induce NYC to prepay for the ventilators, Defendants represented falsely that they were dealing directly with the ventilator manufacturer and made other material misstatements and omissions about their ability to furnish the ventilators.  Defendants' actions constitute a breach of contract, negligent misrepresentation, fraud, and a violation of the New York False Claims Act and common law.

4.      Not only did Defendants breach their contract with NYC by failing to deliver a single ventilator, they have also refused to return millions of taxpayer dollars paid to them by NYC, notwithstanding NYC's demand once it became clear that the ventilators would not be delivered.  This conversion of government funds remains ongoing despite NYC's exhaustive efforts to secure their repayment.  Defendants' misrepresentations, conversion, and persistent disregard for NYC's rights, together with Global's breach of contract, necessitate this lawsuit.

**PARTIES**

5.      Plaintiff NYC is a municipal corporation organized under the laws of the State of New York.

6.      Defendant GLOBAL is a Florida limited liability company with an address at 7801 North Federal Highway, Boca Raton, Florida 33487.  All members of Global, Tyler Gelb and Victoria Conlen, are residents of the state of Florida.

7.      Defendant TYLER GELB ("Gelb") is a natural person who resides at 7801 North Federal Highway, Boca Raton, Florida 33487.  Gelb is an owner and officer of Global.

8.      Defendant VICTORIA CONLEN ("Conlen") is a natural person who resides at 7801 North Federal Highway, Boca Raton, Florida 33487.  Conlen is an owner and officer of Global.

9.      Defendant FREDERICK LEVY ("Levy") is a natural person who resides at 3740 South Ocean Boulevard, Highland Beach, Florida 33487.

10.     Defendant NATIONS FAST TAX & ACCOUNTING 2 INC. ("Nations Fast") is a Florida corporation with an address at 1515 North Federal Highway, Boca Raton, Florida 33432.

11.     Defendant ZJT is a limited liability company formed under the laws of the People's Republic of China, with an address at No. 30 First RD Beiwei, Ouhai Economic Development Zone 4F, Wenzhou, Zhejiang, China.

12.     Defendant ZHU YONG ("Zhu") is a natural person who resides in Zhejiang, China.  Zhu is an owner and officer of ZJT.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193 because Defendants are individuals over the age of 18 who reside in or operate, conduct, engage in, or carry on a business in the state of Florida, including the activities that gave rise to this lawsuit.

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) and (a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of New York, on the one hand, and citizens of Florida and the People's Republic of China, on the other.

15.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

### A.     Defendants Gelb, Conlen, and Levy Attempt to Launch a Ventilator Business

16.     On or about March 17, 2020, Gelb formed Global for the purpose of selling personal protective equipment that was in great demand because of the outbreak of COVID-19 in the United States.

17.     At all relevant times, Gelb served as the president of Global, and Conlen served as its managing partner.  As Global's president, Gelb had ultimate control over Global's operations and thorough knowledge of Global's interactions with other parties.

18.     After forming Global, Gelb was introduced to Levy.  Upon information and belief, this introduction was made so that Gelb and Levy could discuss the possibility of forming a partnership and procuring ventilators from the Chinese market for resale in the United States.

19.     Levy told Gelb that they could source ventilators manufactured in China through ZJT, a Chinese trading company.

20.     Levy had a longstanding business relationship with ZJT and its principal, Zhu.  Specifically, ZJT was a footwear supplier that Levy had used in connection with the shoe wholesale business he operated in the United States.

21.     Neither Levy nor the businesses in which he was engaged had ever purchased ventilators from ZJT or Zhu, and neither ZJT nor Zhu otherwise had any experience trading in ventilators or other medical equipment.

22.     As of March 2020, ZJT's business scope did not include trading in medical devices, ZJT had not obtained the necessary regulatory approval in China for conducting a ventilator trading business.  Upon information and belief, ZJT had no experience

purchasing or selling ventilators or other medical equipment.  As ZJT's longstanding business partner, Levy, knew or should have known of ZJT's lack of authorization to trade in ventilators.

**B.    Global Offers Ventilators to NYC**

23.    Based on their plan that they would use ZJT as their supplier, Gelb, Conlen, and Levy prepared to offer ventilators for sale to NYC.  In connection with this offer, Gelb and Levy, on March 28, 2020, entered into a Partnership and Profit Sharing Agreement whereby Defendants Global, Gelb, and Conlen would receive 60% of the profit, and Levy would receive 40%.  The agreement projected profits of approximately $52 million for Global and $35 million for Levy.

24.    Upon information and belief, as of March 27, 2020, Gelb and Conlen, like Levy, had no experience trading in ventilators or other medical equipment.  Their business partner, Levy, knew or should have known of Gelb and Conlen's lack of experience trading in ventilators.

25.    As of March 27, 2020, and as late as April 12, 2020, Global was not authorized to import goods, such as ventilators, regulated by the U.S. Food and Drug Administration (FDA).  Gelb, Conlen, and Levy knew or should have known that Global could not lawfully import FDA-regulated medical equipment and nonetheless decided to represent to NYC that Global could supply ventilators.

26.    Gelb, Conlen, and Levy failed to inform NYC of Global's lack of authorization to import ventilators.  Upon information and belief, Gelb, Conlen, and Levy withheld this information in order to induce NYC to enter into the purchase agreement and make an up-front payment for the ventilators.

27.     During the weekend beginning on Friday, March 27, 2020, Conlen, acting on behalf of Global, conducted several telephone calls and sent a series of emails to Lawrence Siegel, an NYC official who was involved in NYC's coronavirus-related procurement efforts.  Among other things, Conlen stated that Global could supply NYC with a very large quantity of ventilators.  Conlen also stated that Global had ventilators "on hand."

28.     On March 29, Global sent NYC a written proposal to furnish 20,000 ventilators, model VG70 manufactured by Beijing Aeonmed Co., Ltd. ("Aeonmed"), for the price of approximately $1 billion.  The proposal stated that ZJT would be the supplier of the ventilators.  The proposal also represented that Global had 130 VG70 ventilators on hand, ready to ship within two days.  Levy knew or should have known Global furnished a proposal representing that Global had ventilators on hand.

29.     In fact, Global had no VG70 ventilators on hand at any point.

30.     Later on March 29, after NYC informed Global that it wanted, at least initially, to purchase a smaller quantity of ventilators, Global sent a revised proposal to furnish 130 ventilators, Aeonmed model VG70, for the price of $8,261,500.  This proposal again identified ZJT as the supplier of the ventilators and represented that the 130 VG70 ventilators were on hand.  Levy knew or should have known of Global's revised proposal representing that Global had ventilators on hand.

31.     Global's proposal of March 29—a Sunday—stated that payment would be due on Monday, March 30 and that the ventilators, if the payment was timely received, would be shipped on Tuesday, meaning March 31.

32.     Conlen's March 29 email attaching the revised proposal stated that Global had 130 VG70 ventilators "ready to ship Tuesday," indicating that they were in Global's

control.  This was false.  In fact, neither Global nor ZJT had any ventilators in their control or any reliable assurance from a supplier that ventilators would be available for purchase and ready to ship by Tuesday, March 31.  Levy knew or should have known neither Global nor ZJT had any ventilators in its control at the time.

33.     During this course of communications, Conlen—together with Gelb and Levy—knew or should have known that ZJT's potential sources in China were resellers of ventilators that, because of tremendous market demand, were very likely to sell any ventilators they had to other buyers.

34.     Gelb, Conlen, and Levy did not advise NYC that ZJT did not have ventilators in its control, or that ZJT lacked the authority to export ventilators.  Upon information and belief, Gelb, Conlen, and Levy withheld this information in order to induce NYC to enter into the purchase agreement and make an up-front payment for the ventilators.

35.     Before accepting Global's offer, NYC repeatedly requested "proof of life," that is, information demonstrating that Global had the ability to deliver the 130 VG70 ventilators.  In response, Conlen—on behalf of Global, and with the full participation of Gelb and Levy—made a series of misrepresentations to NYC about its source of ventilators in China. For example, on March 30, Conlen sent NYC a series of Aeonmed promotional videos and stated, "Because of the strict proprietary technology inside of the manufacturing facility they will not let our guys record video.  However ***we got this video directly from the factory*** showing their technologies . . . ." (emphasis added).  In another email on March 30, Conlen represented that Global had a relationship directly with Aeonmed, referring to "our factory in China."  Upon information and belief, Global did not receive the videos from Aeonmed and had no relationship with Aeonmed, and its representations to the contrary were knowingly false.

8

36.     The "proof of life" materials came from Levy, who had received them from Zhu.  Upon information and belief, Zhu supplied this information to Levy on the understanding and agreement that the information would be presented to NYC in order to induce NYC to make an up-front payment for the ventilators.  In turn, Levy agreed with Gelb and Conlen that the information would be presented to NYC for this purpose.

37.     Gelb, Conlen, and Levy misrepresented to NYC the "proof of life" materials.  Upon information and belief, Gelb, Conlen, and Levy misrepresented this information in order to induce NYC to enter into the purchase agreement and make an up-front payment for the ventilators.

**C.     NYC Pays Global $8.2 Million for 130 VG70 Ventilators to Be Delivered Within Days**

38.     On or about March 30, NYC accepted Global's offer.  NYC and Global agreed that NYC would prepay the full contract price of $8,261,500, and that the 130 VG70 ventilators would be delivered to NYC within days according to a shipping schedule provided by Global.

39.     Also on March 30, ZJT issued to Global an invoice stating that the price for the 130 VG70 ventilators was $7,540,000, the number of ventilators and price that ZJT and Levy had previously discussed.  The invoice set forth "Terms of Payment" stating, "Will be paid when confirm the order."

40.     That same day, March 30, Gelb emailed Levy a profit analysis projecting profits of $351,784 for Global and $234,523 for Levy.  In reply, Levy wrote, "Awesome Tyler!!!  Nice deal!!  Good way to wake up!!"

41.     NYC and Global agreed that NYC's prepayment for the ventilators would be made by wire transfer to Global's accounting firm, Nations Fast and Nations Fast agreed to

participate in the transaction, becoming a vendor to NYC, receiving payment from NYC, and submitting certain information, including U.S. Internal Revenue Service Form W-9, which was signed under penalty of perjury.

42.     On March 30, NYC issued a purchase order to Nations Fast.  The purchase order, reflecting an agreement between NYC, Nations Fast, and Global, was registered as a contract with the NYC Office of the Comptroller in accordance with applicable NYC procurement laws.

43.     Also on March 30, pursuant to the purchase order and NYC's agreement with Global, NYC wired $8,261,500 to the Florida bank account of Nations Fast.

44.     On March 31, Nations Fast transferred, from the funds it had received from NYC, $8,231,500 to the Florida bank account of Global.  Upon information and belief, Nations Fast retained $30,000—the difference between the amount it received from NYC and the smaller amount it transferred to Global—as a fee.

**D.     Global Transfers $7.5 Million to ZJT Without Confirmation that ZJT Could Procure 130 VG70 Ventilators**

45.     At the time when Global received the NYC funds, and unknown to NYC, Global had not received confirmation that ZJT could supply 130 VG70 ventilators.  On the contrary, on March 31, Zhu notified Levy that he had only 127 ventilators "locked."  As to additional ventilators, Zhu wrote:  "520 units are hold on, waiting who pay first and higher. . . . So if you want all of them, please arrange the payment ASAP, everyone is searching and buying this machine.  If you want all of them, I will pay for deposit by the money that you wire me right now . . . ."

46.     Levy forwarded Zhu's email to Gelb and Conlen.  Upon information and belief, Levy agreed with Gelb and Conlen that they would continue representing to NYC that

10

Global could fill NYC's order for ventilators, even though they had reason to believe Global would be unable to do so.

47.     On April 2—two days after receiving the NYC funds—Global wired $7,540,000 to the account of ZJT at a bank located in Zhejiang, China.

48.     Upon information and belief, at the time Global wired these funds to ZJT, ZJT still had not confirmed that it could fill NYC's order of 130 VG70 ventilators.

### E.     Global's Ventilator Deal Falls Apart

49.     Both before and after making the payment to ZJT, Global discussed with ZJT purchasing not only the 130 VG70 ventilators for which NYC had prepaid, but additional quantities of ventilators numbering in the thousands for other unidentified parties.

50.     Throughout the first week of April, and unknown to NYC, these discussions continued, with Global seeking to procure 1,050 ventilators immediately and thousands of ventilators per month going forward.  This went well beyond the scope of NYC's order for 130 VG70 ventilators.

51.     According to representations Zhu made, with the knowledge of Levy, and unbeknown to NYC at the time, ZJT used slightly less than half of the NYC funds it received from Global to place a deposit with a ventilator distributor for the purchase of 1,050 units.  To the extent such a deposit was made by ZJT, it was not an authorized use of the NYC funds which were to be used for the purchase of ventilators for NYC.

52.     Zhu, Levy, Gelb, and Conlen failed to inform NYC of ZJT's lack of authorization to trade in medical equipment, including ventilators.  Upon information and belief, Zhu, Levy, Gelb, and Conlen withheld this information in order to retain NYC's funds.

53.     ZJT was never able to procure any VG70 ventilators to fulfill NYC's order for 130 units.  Therefore, because ZJT was Global's only potential source for ventilators, Global was unable to satisfy its obligation to NYC to furnish the ventilators.

54.     On April 7, after finally recognizing that ZJT would not deliver the ventilators, Global asked ZJT for a refund of the money it had paid in connection with the NYC ventilator transaction.  Global did not notify NYC of this development until April 10.

55.     Upon information and belief, Zhu and ZJT failed to procure the VG70 ventilators ordered by NYC and nonetheless retained NYC's funds without delivering the ventilators.  Upon information and belief, Gelb and Conlen, with the knowledge and acquiescence of Levy, waited to notify NYC of ZJT's failure to procure the ventilators in order to retain NYC's funds without delivering the ventilators.

56.     The transaction, as matters stood on April 7, is laid out below:

i)   NYC wired $8,261,500 to Nations Fast, Global's accounting firm.

ii)  From the funds it received from NYC, Nations Fast wired $8,231,500 to Global, retaining $30,000 as its share.

iii) From the funds it received from Nations Fast, Global wired $7,540,000 to ZJT in Zhejiang, China, retaining the remaining money as Global's and Levy's profit and other expenses.

iv)  It is unknown whether ZJT wired any of the $7,540,000 it had received from Global to a supplier or simply retained the money in ZJT's account.

## F.     NYC Demands Return of ITS Monies

57.     Beginning on or around April 10, 2020, upon being notified that Global had requested a refund from ZJT, NYC demanded the immediate return of the $8,261,500 that it

had paid under its agreement with Nations Fast and Global.  This demand was made first to Global and, later, to the various other parties to the transaction, including all of the Defendants.

58.     In communications with NYC, Global representatives repeatedly acknowledged that the outstanding funds in the amount of $8,261,500 were due to NYC. Global indicated through its attorney that the NYC funds were expected to be fully returned by April 14.  Levy knew or should have known of the communications between Global and NYC concerning the outstanding funds.

59.     Global did not return any of the funds to NYC until June 10.  On that date, Global returned $3,977,594.28.  This left an outstanding balance due to NYC of $4,283,905.72.

60.     Upon information and belief, the partial refund to NYC included moneys that ZJT had returned to Global in the combined amount of $3,477,594.28.  Upon information and belief, ZJT has not provided any additional refund to Global.  Thus, of the $7,540,000 that ZJT received in connection with this transaction, it has failed to return $4,062,405.72.  Upon information and belief, some or all of this money is in the possession of ZJT.

61.     The $4,283,905.72 outstanding balance due to NYC net of the $4,062,405.72 received and not returned by ZJT is $221,500.  Upon information and belief, these $221,500 in funds have been retained by Global, Gelb, Conlen, Levy, and Nations Fast.

62.     NYC has demanded the return of these outstanding funds, totaling $4,283,905.72, from Defendants and those funds have still not been returned.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Against GLOBAL and NATIONS FAST)

63.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

64.     Defendants Global and Nations Fast are in breach of their agreement with NYC by their failure to timely satisfy their obligation to furnish 130 ventilators, Aeonmed model VG70.

65.     As a result of Global's and Nations Fast's breach, NYC has suffered damages in the amount of at least $4,283,905.72.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (Against GLOBAL, GELB, CONLEN, LEVY, NATIONS FAST, and ZJT)

66.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

67.     Defendants Global, Gelb, Conlen, Levy, Nations Fast and ZJT received and retained funds paid by NYC in the combined amount of at least $4,283,905.72.  Because no consideration was returned to NYC in exchange for these funds, those Defendants have been enriched at NYC's expense.

68.     It is against equity and good conscience to permit the Defendants to retain the outstanding NYC funds.

## THIRD CLAIM FOR RELIEF
### Money Had and Received
### (Against GLOBAL, NATIONS FAST, and ZJT)

69.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

14

70.     Defendants Global, Nations Fast, and ZJT, respectively, received and benefited from money belonging to NYC in the combined amount of at least $4,283,905.72.

71.     It is against equity and good conscience to permit Global, Nations Fast, and ZJT to retain the outstanding NYC funds.

## FOURTH CLAIM FOR RELIEF
### Account Stated
### (Against GLOBAL)

72.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

73.     Defendant Global was presented with NYC's demand that the money NYC paid to Global, via Nations Fast, be returned to NYC.  Global acknowledged that these funds belonged to NYC and were due to NYC.

74.     Following Global's return of a portion of the NYC funds, NYC presented Global with a demand that it return the outstanding balance in the amount of $4,283,905.72. Global failed to object to this demand.  Therefore, an account stated exists in the amount of $4,283,905.72.

## FIFTH CLAIM FOR RELIEF
### Common Law Conversion
### (Against GLOBAL, NATIONS FAST, and ZJT)

75.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

76.     Defendants Global, Nations Fast, and ZJT have intentionally and without authority assumed control over funds belonging to NYC in the amount of $4,283,905.72.  In so doing, those Defendants have interfered with NYC's right of possession of such funds.

## SIXTH CLAIM FOR RELIEF
### Conversion in Violation of N.Y. False Claims Act
### N.Y. State Finance Law § 189(1)(d)
### (Against GLOBAL, GELB, CONLEN, LEVY, NATIONS FAST, ZJT, and ZHU)

77.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

78.     Defendants Global, Gelb, Conlen, Levy, Nations Fast, ZJT and Zhu, respectively, have possession, custody, or control of property or money used, or to be used, by NYC and have knowingly delivered, or caused to be delivered, less than all of that money or property.

79.     The acts of these Defendants caused NYC to sustain damages in the amount of at least $4,283,905.72.  These Defendants are liable for treble damages and civil penalties under the New York False Claim Act.

## SEVENTH CLAIM FOR RELIEF
### Submission of False Claim in Violation of N.Y. False Claims Act
### N.Y. State Finance Law § 189(1)(a) and (b)
### (Against GLOBAL, GELB, CONLEN, and LEVY)

80.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

81.     Defendants Global, Gelb, Conlen, and Levy presented, and caused to be presented, a claim for payment in connection with NYC's agreement to purchase 130 VG70 ventilators for the price of approximately $8.2 million.  The claim was false and fraudulent as to Global's ability to perform under the agreement.  Defendants knew or should have known that Global did not have a reliable source for the ventilators and that there was a substantial likelihood that Global would be unable to furnish the ventilators.

82.     Defendants Global, Gelb, Conlen, and Levy made and used, and caused to be made and used, false records and statements material to their false and fraudulent claim for payment in connection with NYC's agreement to purchase 130 VG70 ventilators for the price of approximately $8.2 million.  Defendants knew or should have known that such records and statements were false.

83.     The acts of these Defendants, including the failure to return the funds in full when Defendants had reason to believe they would be unable to fill NYC's order for ventilators, caused NYC to sustain damages in the amount of at least $4,283,905.72.  These Defendants are liable for treble damages and civil penalties under the New York False Claim Act.

### EIGHTH CLAIM FOR RELIEF
### Conspiracy in Violation of N.Y. False Claims Act
### N.Y. State Finance Law § 189(1)(c)
### (Against GLOBAL, GELB, CONLEN, LEVY, ZJT, and ZHU)

84.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

85.     Defendants Global, Gelb, Conlen, Levy, ZJT and Zhu, in order to induce NYC to prepay approximately $8.2 million, agreed to make false and fraudulent representations to NYC about Defendants' ability to furnish VG70 ventilators and other issues material to the transaction.

86.     Defendants made false and fraudulent statements to NYC about Global's and ZJT's relationship with Aeonmed, their ability to furnish the ventilators, and other issues material to the transaction.

87.     Therefore, Defendants conspired to present to NYC a false claim for payment and to make and use false records and statements material to the false claim.

88.     The acts of the Defendants caused NYC to sustain damages in the amount of at least $4,283,905.72.  The Defendants are liable for treble damages and civil penalties under the New York False Claim Act.

### NINTH CLAIM FOR RELIEF
### Common Law Fraud
### (Against GLOBAL, GELB, CONLEN, LEVY, ZJT, and ZHU)

89.     Plaintiff repeats and realleges paragraphs 1-62 with the same force and effect as if fully set forth in this paragraph.

90.     Defendants Global, Gelb, Conlen, Levy, ZJT and Zhu made misrepresentations and omissions of fact to NYC in order to defraud NYC and retain NYC's funds without delivering the VG70 ventilators.  These Defendants knew or should have known the misrepresentations to be false when they were made, and made them with the intention of defrauding NYC.

91.     Defendants' material misrepresentations or omissions of fact include, but are not limited to:

i)      Defendants failed to inform NYC they had no experience trading in medical devices including ventilators;

ii)     Defendants failed to inform NYC that Global was not authorized to import FDA regulated medical devices such as ventilators;

iii)    Defendants failed to inform NYC that ZJT and Zhu had not obtained regulatory approval to conduct a ventilator trading business;

iv)     Defendants materially misrepresented to NYC that ZJT had 130 VG70 ventilators "on hand" and ready to ship within two days;

v)      Defendants made material misrepresentations in their proof of life

materials;

vi)      Defendants failed to inform NYC that Zhu and ZJT used and/or retained

slightly less than half of the NYC funds it received from Global to place a deposit

with a different ventilator distributor for the purchase of 1,050 units – this deposit

was not an authorized use of the NYC funds;

vii)      Defendants failed to procure the VG70 ventilators ordered by NYC and

Defendants waited to notify NYC of ZJT's failure to procure the ventilators in

order to retain NYC's funds without delivering the ventilators.

92.      NYC reasonably relied on the material misrepresentations and omissions

of fact made by these Defendants.  As a result of these Defendants' fraud, NYC suffered

damages in the amount of at least $4,283,905.72.

93.      These acts were gross, wanton and/or willful and Defendants are

additionally liable for punitive damages.

**TENTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**(Against GLOBAL, GELB, CONLEN, and LEVY)**

94.      Plaintiff repeats and realleges paragraphs 1-62 with the same force and

effect as if fully set forth in this paragraph.

95.      Defendants Global, Gelb, Conlen, and Levy were negligent and careless

in imparting their words in order to retain NYC's funds without delivering the ventilators.

Defendants knew or should have known their negligently and carelessly imparted words to be

false when they were made, expressed them directly to Plaintiff, and knew or should have

known Plaintiff would act upon them.

19

96.     NYC reasonably relied on the material misrepresentations and omissions of fact made by these Defendants.  As a result of these Defendants' negligent misrepresentations and omissions of fact, NYC suffered damages in the amount of at least $4,283,905.72.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered as follows:

(a)     Awarding NYC damages in the amount of at least $4,283,905.72 plus interest;

(b)     Awarding NYC punitive damages in the amount the Court finds proper;

(c)     Directing that Defendants, pursuant to the New York False Claims Act ("NYFCA"), to pay $12,851,717.20 (equal to three times the amount of damages sustained) because of Defendants' violations of the NYFCA;

(d)     Directing that Defendants, pursuant to the NYFCA, pay a civil penalty of not less than $6,000 and not more than $12,000 for each violation of New York State Finance Law § 189;

(e)     Directing that Defendants pay Plaintiff's costs, including attorneys' fees, as provided by law, including without limitation New York State Finance Law §§ 190(6)(a) and 190(7);

(f)     Granting such equitable relief as may be necessary to redress Defendants' violations of law; and

(g)     Granting such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


Dated:   Boca Raton, Florida
         October 8, 2020

                                  *s/ Matthew Triggs*
                                  Matthew Triggs
                                  Florida Bar No. 865745
                                  Matthew I. Rochman
                                  Florida Bar No. 84615
                                  PROSKAUER ROSE LLP
                                  2255 Glades Road, Suite 421A
                                  Boca Raton, FL 33431
                                  Tel: (561) 241-7400
                                  Fax: (561) 241-7145
                                  E-Mail: mtriggs@proskauer.com
                                  E-Mail: mrochman@proskauer.com
                                  Secondary: florida.litigation@proskauer.com

                                  Michael A. Cardozo*
                                  Lucy Wolf*
                                  PROSKAUER ROSE LLP
                                  Eleven Times Square
                                  New York, NY 10036-8299
                                  Tel: (212) 969-3000
                                  E-Mail: mcardozo@proskauer.com
                                  E-Mail: lwolf@proskauer.com

                                  *Attorneys for Plaintiff City of New York*

                                  Brian T. Horan*
                                  Office of the New York City Corporation Counsel
                                  100 Church St.
                                  New Yok, NY, 10007
                                  Tel: (212) 356-2297
                                  E-Mail: bhoran@law.nyc.gov

                                  *Attorney for Plaintiff City of New York*

                                  *Application for admission *pro hac vice* to be
                                  sought concurrently herewith

21